UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN THE MATTER OF THE            :        (Electronically Filed)
UNITED STATES OF AMERICA        :        No. 4:05-CR-490
EXTRADITION OF                  :
ALEXANDER WINSTON SYLVESTER     :        (Judge Jones)

## SYLVESTER'S REPLY TO GOVERNMENT'S MEMORANDUM SUPPORTING EXTRADITION

AND NOW, comes Alexander Sylvester, by and through his attorney,

Stephen F. Becker, and files this reply to the government's memorandum.

**ISSUE A:** The government's attempt at refuting Sylvester's argument in his

principal brief is based on faulty logic.  The government's brief essentially argues

that since Article 4(1)(ii) of the Treaty provides that extradition shall not be

granted if prosecution for the offense is time-barred under Canadian law, then if

the offense is not time-barred under Canadian law, no other provision of the Treaty

could possibly prohibit extradition based on Pennsylvania's statute of limitation.

But such a conclusion does not follow by any rule of logic.[1]  The government's

assertion (based on its faulty logic) -- that "the Treaty provides that the only statute

of limitations applicable is that of the requesting State" -- is just plain incorrect.

There is no such language in the Treaty.  Article 4(1)(ii) refers only to the

consequences of the lapse of the Canadian statute of limitations; other articles of

---

[1] The government has assumed that if A implies B then NOT A implies NOT B -- clearly an illogical leap.

the Treaty could and do proscribe extradition based on other factors, such as in this case the lapse of the Pennsylvania statute of limitations pursuant to Article 10(1).

The government ignores that Article 10(1) is a separate provision that obviously must be given effect.  Moreover, there is no inherent problem in giving that provision effect since it does not contradict in any way Article 4(1)(ii).  In the instant case Article 10(1) speaks to evidence sufficient according to the laws of Pennsylvania to commit Mr. Sylvester for trial.  It just so happens that in Pennsylvania there are a number of factors that must be considered under that article, one of them being Pennsylvania's statute of limitations.  That does not contradict Article 4(1)(ii).

The government argues essentially that Article 10(1) of the Treaty should not be given effect because the Canadian authorities would be "astonished" that extradition might depend on the place where Sylvester was found.  (Government memorandum, p.5, n.3).  But of course it might depend on that.  Why else put that provision in the Treaty.  It was explicitly intended that the result of an extradition hearing might depend on "the laws of the place where the person sought shall be found."  Treaty, Article 10(1).

Moreover, when the parties to an extradition treaty do not desire that the result might depend on "the laws of the place where the person sought shall be

found," they know well how to modify the treaty accordingly.  For example,

consider the U.S.-Italy extradition treaty.

> The original version of Article V of the 1973 treaty provided that sufficiency would be determined according to the "laws of the place where the person sought shall be found," language similar to that in the 1868 Convention.  In the 1970 negotiating session, the Italian delegation insisted that this be changed to "laws of the requesting Party." Both delegations appear to have been aware of cases construing the discarded language to refer to state law, *e.g., Pettit v. Walshe, supra; Shapiro v. Ferrandina, supra*; both appear to have contemplated that the change would ensure that this construction not be carried forward and that uniform federal law be applied.

*Greci v. Birknes*, 527 F.2d 956, 958-59 (1st Cir. 1976).

In the instant case of the U.S.-Canada extradition treaty, unlike the U.S.-

Italy treaty discussed above, the language was never changed from "laws of the

place where the person sought shall be found" to "laws of the requesting Party."

That is, the U.S.-Canada treaty intended that state law apply under Article 10(1)

and that the results of a probable cause hearing might well depend on the state in

question.  Such a result should astonish neither party to the treaty since both

countries knowingly bargained for just that provision, understood the

consequences of that provision, and never modified that provision as was done in

other treaties.

Besides its attempt to refute the logic of Sylvester's position, the

government cites to *Murphy*, asserting that the Second Circuit has "rejected an

argument identical to Sylvester's." (Government memorandum, p. 4).  But that

3

assertion is manifestly incorrect.  In *Murphy* the petitioner was making an entirely

different argument than the one Sylvester makes here.  The petitioner in *Murphy*

"argue[d] that extradition . . . would violate either due process or the doctrine of

'dual criminality.'"  *Murphy v. United States*, 199 F.3d 599, 602 (2d Cir. 1999).

The dual criminality argument is really an argument under Article 2(1) of the

Treaty (as amended) which provides that extradition shall be granted if the conduct

at issue constitutes an appropriate offense in both countries.  But Sylvester has not

raised this issue -- whether the statute of limitations counts as conduct under

Article 2(1) -- and in fact concedes that

> "inquiries concerning dual criminality and the statute of limitations are
> distinct" that is, the focus of the dual criminality inquiry is on the conduct
> that the law criminalizes, not the statute of limitations."

*Murphy* at 602 (quoting *Theron v. United States Marshal*, 832 F.2d 492, 499 (9th

Cir. 1987)).  Rather as stated above and in Sylvester's principal brief, his argument

is based on Article 10(1) of the Treaty, a provision not even mentioned, let alone

discussed, in *Murphy*.

**ISSUE B:** The government provides three arguments why, contrary to the

plain reading of Article 10(1), Pennsylvania law should not apply when

determining if the evidence offered by the government at the extradition hearing is

sufficient to commit the accused for trial.

1. The government cites *Bingham v. Bradley*, 241 U.S. 511, 517 (1916) for

the proposition that live witnesses are not necessary in the instant case.  But in

*Brigham* the petitioner was arguing that certain "affidavits . . . were incompetent

because taken *ex parte*, in the absence of appellant and without opportunity for

cross-examination."  *Id.* at 517.  The Supreme Court held that such affidavits were

competent, citing the statute equivalent to the present day 18 U.S.C. § 3190.  The

Court was not discussing Article 10(1), the provision of the Treaty at issue in the

instant case.

2. The government characterizes *Buchanan*'s requirement that an accused

may not be held for trial solely on the basis of hearsay as procedural, and then,

bootstrapping that assertion, argues that Rule 5.1 of the Federal Rules of Criminal

Procedure applies and permits a probable cause finding based solely on hearsay.

But *Buchanan* makes clear that its holding as to the quantum of evidence needed

for a probable cause finding is not procedural at all but based rather on the

Pennsylvania Constitution.   *Commonwealth ex rel. Buchanan v. Verbonitz*, 581

A.2d 172, 175 (Pa. 1990).  Certainly since the extradition hearing takes place in

federal court, federal rules of procedure apply.  But the probable cause

determination is substantive, and it must be grounded in Pennsylvania law -- that

is, the government must offer sufficient evidence according to *Buchanan*.

3. The government's claim that some of the evidence it offered at the

extradition hearing is not "technically" hearsay under *Buchanan* is difficult to

5

fathom.  The fact that all the evidence was admissible does not imply that it was not hearsay or that it met the quantum of substantive evidence required under Pennsylvania law to hold an accused for trial.

WHEREFORE, Mr. Sylvester respectfully requests that the Court deny the government's request for certification of this matter to the Secretary of State.

Respectfully submitted,

Date: 2/6/06

s/Stephen F. Becker
Stephen F. Becker
Attorney I.D. No. 77963
Attorney for Alexander Sylvester
Shapiro & Becker
114 Market Street
Lewisburg, PA  17837
Phone:  (570) 523-0777
Fax:     (570) 523-9798
Email: sbecker@shapiro-becker.com

## <u>CERTIFICATE OF SERVICE</u>

I, Stephen F. Becker, certify that on the date below I caused a true and correct copy of the foregoing **<u>SYLVESTER'S REPLY TO GOVERNMENT'S MEMORANDUM SUPPORTING EXTRADITION</u>** to be filed electronically thus serving

AUSA Christian A. Fisanick

Date: 2/6/06                                      <u>s/Stephen F. Becker</u>
                                                  Stephen F. Becker